UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                              )<br>)<br>KBC CAPITAL, LLC,                  )<br>)<br>Defendant.                         )<br>)<br>_____ ) | Criminal No. 1:24-cr-10226-FDS |

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits the following memorandum in support of the binding plea agreement docketed at ECF No. 3 and as amended by ECF No. 10.

### FACTS

**I.      Background on KBC Capital, LLC**

KBC is a New Hampshire corporation with a principal place of business in Nashua, New Hampshire.  KBC sells a variety of consumer products across several business lines.  PSR ¶ 7. "Lethal Eye" was the trade name of KBC's business lines that marketed accessories for firearms. Lethal Eye was in operation for approximately ten years until it ceased to operate in 2023.  PSR ¶ 8.  The President and sole shareholder of KBC is Xiaozhong ("Mark") ZHANG.  ZHANG was ultimately responsible for all corporate decisions KBC made.  KBC also employed an operations manager (the "Operations Manager"), whom KBC paid an annual salary and whose compensation was not dependent on sales.  The Operations Manager has never had an ownership interest in KBC. PSR ¶ 9.

**II.     Background on National Firearms Act**

The National Firearms Act ("NFA") regulates the manufacture, possession, and registration of certain weapons defined under the Act, generally referred to as "NFA Firearms."

NFA Firearms include, among other things, short-barreled rifles (SBRs), suppressors (i.e., silencers), short-barreled shotguns, and machineguns. *See* 26 U.S.C. § 5845(a). PSR ¶ 10. The NFA imposes taxes on the making and transfer of NFA Firearms, as well as a special occupational tax on Federal Firearms Licensees ("FFLs") engaged in the business of importing, manufacturing, and dealing in NFA firearms. *See* 26 U.S.C. §§ 5801, 5821. The NFA requires registration of all NFA firearms with the Attorney General in the National Firearms Registration and Transfer Record ("NFRTR"). *See* 26 U.S.C. § 5841. PSR ¶ 11.

The purpose of the NFA is to regulate transactions in NFA firearms, which are deemed to be more dangerous than those not regulated by the NFA due to their proliferation in criminal activity at the time the NFA was enacted. Further prohibitions and limitations are implemented by states. For example, possession of a suppressor is illegal in Massachusetts by "any person, other than a federally licensed firearms manufacturer, an authorized agent of the municipal police training committee, or a duly authorized sworn law enforcement officer while acting within the scope of official duties…." M.G.L. ch. 269, § 10(a). PSR ¶ 12.

The NFA also requires that an FFL be a Special Occupational Taxpayer (SOT) or file additional paperwork with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") in order to buy, sell, transfer, or manufacture items regulated by the NFA. The NFA further prohibits an FFL who is not an SOT to manufacture or change a firearm that originally was not an NFA weapon to create an NFA weapon. For example, creating a short-barreled rifle out of pistol parts without fulfilling the registration and taxing requirements is a violation of the NFA because such a firearm is subject to all those requirements of the NFA. Non-SOT holders cannot make an NFA Firearm without receiving prior ATF approval. PSR ¶ 13.

2

**III.    KBC (d/b/a Lethal Eye) Engaged in Criminal Conduct**

   A.    *Advertisements on Lethal Eye's Websites*

Using its website, www.lethaleye.com, KBC marketed various firearm parts that included adapters, muzzle breaks, slide lock levels, and trigger connectors. The website also contained a video that displayed and audibly explained how to use the advertised adapters to attach automotive oil filters / solvent traps to the barrel of a pistol.[1] Although automotive oil filters did not appear available for sale on the website, they could be found for sale after utilizing the "search" function on the website by typing one of several individual letters that included "A," "D" and "F."[2] PSR ¶ 14.

Several "muzzle breaks" advertised for sale appeared to be firearm silencers, given their length and design.[3] Every webpage on the Lethal Eye website included a disclaimer that contained but was not limited to the following statements:

> All products are designed and sold with 100% COMPLETE COMPLIANCE AND COOPERATION for and with BATFE [ATF] and NFA rules and regulations.
>
> BUYER UNDERSTANDS THAT THESE ARE NOT SUPPRESSORS AND OR SILENCERS IN ANY WAY SHAPE OR FORM.

---

[1] A solvent trap or automotive oil filter attached to the end of a firearm barrel will function as a firearm silencer / suppressor if the firearm is fired and will continue to do so with subsequent firings.

[2] A solvent trap or automotive oil filter attached to a firearm is not considered a firearm silencer / suppressor until a hole is created on the bottom of the filter by drilling or firing the firearm once attached. It is NOT common practice to attach solvent traps or automotive oil filters to firearms for any legal purpose (e.g., firearm cleaning).

[3] Most commercially available muzzle breaks are typically no longer than 2 to 3 inches, as additional length does not add to their intended function of reducing recoil and muzzle rise. The items advertised by Lethal Eye ("M-079", "M-074", and "M-099") appeared to have "baffles" similar to a firearm silencer / suppressor.

This disclaimer was included in an attempt to insulate Lethal Eye from criminal liability and was not in fact accurate. A search of ATF records confirmed that KBC never corresponded with ATF regarding its products. PSR ¶ 15.

In or about 2017, ZHANG and the Operations Manager attended a gun show that was also attended by an individual known to the parties but identified here as "INDIVIDUAL NO. 1." At this gun show, INDIVIDUAL NO. 1 was selling firearms accessories that are not federally regulated. ZHANG and the Operations Manager approached INDIVIDUAL NO. 1 to ask if INDIVIDUAL NO. 1 would be interested in distributing some of KBC's products. INDIVIDUAL NO. 1 agreed to sell what KBC (doing business as Lethal Eye) marketed as muzzle breaks, end caps, and thread adapters, but which were actually components of a silencer. INDIVIDUAL NO. 1 recognized that some of the products that KBC marketed could be used to manufacture a silencer, and as a result, advised KBC to include a disclaimer on its website. ZHANG made the ultimate decision to place the disclaimer on the Lethal Eye website, thus acknowledging the possibility that Lethal Eye's products could be used in contravention of the National Firearms Act. PSR ¶¶ 16-17.

      B.      *Investigators' Purchase and KBC's Delivery of Unregistered NFA Suppressors*

On May 19, 2023, and June 5, 2023, investigators purchased suspected suppressors and additional firearm parts from www.lethaleye.com. The items purchased on May 19, 2023, were a "½ - 28 Quad Thread Oil Filter Solvent Trap Adapter" (Item M-048) and a "½ - 28 Pitch 18 Port Gilled Muzzle Break Recoil Reducer Combo" (Item M-074 combo). On June 1, 2023, the package containing the items was retrieved by investigators at an undercover mailbox (the "UC Drop Box"). The package label included KBC's address on its label as the return address. The handwritten text "1 x M-074 combo" and "1 x M-048," were visible at the bottom of the label.

4

The items purchased on June 5, 2023, were two (2) "Muzzle Break .308 5/8-24 TPI 6 Inch Length 7075 Aluminum Precision Recoils" (Item M-099 / M-095). On June 21, 2023, the package containing the items was retrieved by investigators at the UC Drop Box. The package label contained 17E Clinton Drive, Hollis, New Hampshire as the return address on the label, with "2 x M-099" handwritten on the bottom of the label. PSR ¶ 18.



On June 22, 2023, investigators sent all items purchased from KBC to the Firearms Technology Criminal Branch ("FTCB") within ATF for analysis and classification. FTCB concluded that items M-074 and M-099 were classified as firearm silencers. As such, these items are subject to the provisions of the NFA and require registration upon manufacture and any subsequent transfer in the National FRTR in accordance with 26 U.S.C. § 5861. However, neither ZHANG, the Operations Manager, nor KBC submitted any applications to transfer or register any of the firearm silencers purchased by investigators. PSR ¶ 19.

ATF records confirm that neither KBC, ZHANG, nor the Operations Manager are FFLs. Therefore, they are not licensed importers, licensed manufacturers, or licensed dealers, as those terms are defined in 18 U.S.C. § 921. Accordingly, KBC manufactured and transferred NFA Firearms in violation of federal law. PSR ¶ 20.

C.   *Bulk Purchase of Additional Firearm Silencers in Violation of the NFA*

In May of 2023, the U.S. Postal Inspection Service USPIS created an email account (hereinafter, the "source account") from which to purchase items as well as communicate with Lethal Eye. This email account has been the listed account on all purchases and used for all email communications with Lethal Eye. PSR ¶ 21. On July 18, 2023, at the direction of investigators, a confidential source (the "CS") attempted to contact both phone numbers ((800) 232-5158 and (603) 716-5153) listed on the website www.lethaleye.com. There was no answer at either number, and both numbers had the same generic automated message after several rings. The CS wrote an email that he/she sent to "info@lethaleye.com" from the source account. (This email address is listed on www.lethaleye.com under "contact info" and is also listed below the phone number of "6037165153" when the "menu" function is utilized). In the email, which was reviewed by investigators, the CS requested a bulk order of the "M-099" items and requested a discount. The CS requested to pick the items up and pay cash. The CS also requested to speak with someone from Lethal Eye regarding the deal. PSR ¶ 22.

Several hours later, a response was sent from "Crystal Wang" (train-rain@hotmail.com) asking how many "M-099s" the CS was looking for. The bottom of the email read "Best regards, Marisol." PSR ¶ 23. As email negotiations continued over the next several days, "Marisol" offered a price of $1,394.87 for fifteen (15) of the "M-099s" but advised that local pick up was not available, instead offering to ship anywhere in the United States. In a subsequent email "Marisol" sent to the CS on July 24, 2023, the CS was given the option to pay by check or receive an electronic invoice. PSR ¶ 24.

At the direction of investigators, the CS requested the invoice, which the CS received via email on July 27, 2023. Following receipt of the invoice, the CS instructions advised Lethal Eye that the invoice was not functioning properly, requested a name and shipping address for a money

6

order. On July 31, 2023, "Crystal Wang" responded to make the "check" payable to "KBC Capital LLC" at "12 Murphy Dr. Suite 200, Nashua, New Hampshire." PSR ¶ 25.

On July 31, 2023, investigators sent (2) US Postal Money Orders (one for $1,000.00 USD and the other for $394.87 USD) via overnight US Mail to KBC Capital LLC at 12 Murphy Drive, Suite 200, Nashua, New Hampshire. Records from the Federal Reserve show that the money orders were negotiated for KBC's benefit at a TD Bank ATM 10 Gusabel Avenue, Nashua, New Hampshire. PSR ¶ 26.

The requested "M-099s" were shipped to the UC Drop Box and recovered on August 7, 2023. The package label showed the sender as "KBC Capital LLC" and contained writing at the bottom of the label showing "15 x M-099." The label listed 17E Clinton Dr. Hollis, NH as the return address. As set forth above, M-099s previously received from Lethal Eye were declared firearm silencers by ATF FTCB. PSR ¶ 27.



IV. **Search Warrant Execution**

On August 18, 2023, investigators executed that search warrant at KBC's principal place of business, resulting in the seizure of three-hundred-twenty-seven (327) firearm silencers, five (5) firearms not regulated by the NFA, and several hundred silencer endcaps and associated parts (e.g.,

tubing, adapters, et al.). Present at KBC's business address were sufficient components to manufacture a functioning silencer. PSR ¶ 28.

V.       **Transfers of Suppressor Parts to Massachusetts Residents in Violation of the NFA**

Between 2020 and 2023, KBC transferred the following suppressor parts in violation of the NFA:

| Count | Part Number | Purchase Date |
|---|---|---|
| 1 | M-079 | 9/13/2022 |
| 2 | M-079 | 11/8/2022 |
| 3 | M-079 | 2/6/2023 |
| 4 | M-099 | 6/5/2023 |
| 5 | M-099 | 6/5/2023 |
| 6 | M-099 | 8/3/2023 |
| 7 | M-099 | 8/3/2023 |
| 8 | M-099 | 8/3/2023 |
| 9 | M-099 | 8/3/2023 |
| 10 | M-099 | 8/3/2023 |
| 11 | M-099 | 8/3/2023 |
| 12 | M-099 | 8/3/2023 |
| 13 | M-099 | 8/3/2023 |
| 14 | M-099 | 8/3/2023 |
| 15 | M-099 | 8/3/2023 |
| 16 | M-099 | 8/3/2023 |
| 17 | M-099 | 8/3/2023 |
| 18 | M-099 | 8/3/2023 |
| 19 | M-099 | 8/3/2023 |
| 20 | M-099 | 8/3/2023 |
| 21 | M-074 | 5/19/2023 |
| 22 | M-074 | 3/8/2022 |
| 23 | M-074 | 10/14/2020 |
| 24 | M-074 | 4/8/2020 |
| 25 | M-074 | 10/25/2022 |
| 26 | M-074 | 5/27/2022 |

PSR ¶ 29.

**CALCULATION OF GUIDELINE SENTENCING RANGE**

Pursuant to the binding plea agreement, the government states that the offense level under the Guidelines is 25:

8

    a) Defendant's base offense level is 18, because the offense involves a firearm described in 26 U.S.C. § 5845(a) (USSG § 2K2.1(a)(5));

    b) Defendant's offense level is increased by 10, because the offense involved more than 200 firearms (USSG § 2K2.1(b)(1)(E)); and

    c) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

Having reviewed the PSR and Probation's calculation under Chapter 8 of the U.S. Sentencing Guidelines, the government defers to the Court in connection with the calculation of the offense level and resulting GSR at sentencing.

### THE BINDING PLEA AGREEMENT CALLS FOR A REASONABLE SENTENCE

The Court should impose the parties' joint recommendation of three years of probation, a $260,000 fine ($10,000 per count); and a $10,400 special assessment ($400 per count).

**I.    Three Years of Probation Serves the Purposes of Sentencing.**

Three years of probation under the conditions outlined in the plea agreement serve the interests of sentencing. A sentence of probation is intended to effect "supervis[ion] in the hope that further illegal acts would not be committed and this general purpose can be applicable to corporations as well as individuals." *United States v. Atl. Richfield Co.*, 465 F.2d 58, 61 (7th Cir. 1972). Moreover, one important purpose of sentencing is "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). One condition of KBC's probation will be that KBC ceases selling firearms accessories (Plea Agr. ¶ 5(c)), a condition that KBC is already in compliance with. PSR ¶ 38. Based upon compliance with this condition, the public will be protected against further potential sales of illegal suppressors. Three years of probation is an appropriate sentence.

**II.     The Financial Penalties Agreed to by the Parties Are Also Appropriate.**

    A.     <u>There Is an Open Question as to Whether the Plea Agreement Provides for the Statutory Maximum Penalty.</u>

The parties entered into the plea agreement on the understanding that maximum fine for a violation of 26 U.S.C. § 5861(e) was $10,000, the fine agreed to by the parties. *See* Plea Agr. ¶¶ 2, 5(a). This understanding was based on the plain language of the National Firearms Act, which states: "Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both." 26 U.S.C. § 5871.

The U.S. Probation Office has reached a different conclusion as to the maximum penalty for violation of the NFA. *See* PSR ¶ 72 (concluding that under 18 U.S.C. § 3571(c)(3), (e) that the maximum penalty for violation of the NFA is $500,000 per count). The basis for this conclusion is subsection (e), which states that:

> If a law setting forth an offense specifies no fine or a fine that is lower than the fine otherwise applicable under this section and such law, **by specific reference**, exempts the offense from the applicability of the fine otherwise applicable under this section, the defendant may not be fined more than the amount specified in the law setting forth the offense."

18 U.S.C. § 3571(e) (emphasis added).

Several courts have reached the same conclusion as the Probation Office in connection with other statutes. *See United States v. Looney*, 152 F. App'x 849, 859 (11th Cir. 2005) ("Thus, a lower fine limit in the statute setting forth the offense of conviction does not preclude the district court from imposing a higher fine under the general fine statute unless the statute setting forth the offense of conviction specifically says so."); *United States v. Hobbs*, 983 F.2d 1058 n.1 (4th Cir. 1993) ("Section 3571(e) is not applicable here because 40 U.S.C. § 318c does not exclude the applicability of § 3571 by specific reference."); *United States v. Eisenberg*, 496 F. Supp. 2d 578,

580 (E.D. Pa. 2007) ("None of the statutes under which Eisenberg was convicted invoked § 3571(e)'s 'special rule,' specifically exempting itself from the higher maximum fines provided for in the alternate fine statute."); United States v. Stanley, No. 15-00271-01-CR-W-HFS, 2016 WL 1417883, at *3 (W.D. Mo. Feb. 2, 2016) ("While 26 U.S.C. § 7201 and 26 U.S.C. § 7212 each set forth potential fines for violations of those statutes, neither section 7201 nor 7212 purports to override the alternative fine provision of section 3571."). Other courts have concluded that the "more specific statute" should control in the event there are two conflicting fine provisions. Apgar v. United States, No. 5:21-MC-17-JA, 2022 WL 20289050, at *6 n. 7(M.D. Fla. Mar. 14, 2022)(quoting Tug Allie-B, Inc. v. United States, 273 F.3d 936, 948 (11th Cir. 2001) ("[I]f two statutes conflict, the more recent or more specific statute controls."). In Apgar, the court rejected the government's argument that, even though the provision setting forth the offense did not contain a "notwithstanding any provision of title 18" clause, that 18 U.S.C. § 3571 set forth the appropriate fine.

In any event, the Court need not decide what approach is correct, as a $260,000 fine, paid over three years is reasonable under the circumstances. KBC has earned between $74,961 and $122,082 in profit per year over the past five years. Assuming KBC's finances are static during the probationary period, the proposed financial penalties would effectively wipe away all or substantially all of KBC's profits. Moreover, even if the plain language of Section 3871 is ineffective, it sets forth Congress's intent in terms of what criminal fines for violation of the NFA should be. Accordingly, In light of KBC's ability to pay a fine, and Congress's apparent intent in fashioning the financial penalties for violation of the NFA, the proposed financial penalties are reasonable.

## CONCLUSION

For the foregoing reasons, the government respectfully request that the Court impose a sentence consistent with the binding plea agreement.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its attorney,

JOSHUA S. LEVY
United States Attorney

*/s/ Evan D. Panich*
EVAN D. PANICH
Assistant United States Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: December 13, 2024

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                              /s/ Evan D. Panich
                                              Assistant United States Attorney

Date: December 13, 2024